## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **CATELIN CLOBES,** | **Civil Action No.** <br> **21-cv-02117-PJS-FJD** |
| **Plaintiff,** | |
| **v.** | **MEMORANDUM OF LAW** <br> **IN SUPPORT OF MOTION** <br> **TO DISMISS BY DEFENDANT** |
| **NBCUNIVERSAL MEDIA, LLC,** <br> **BRANDY ZADROZNY, and ALIZA** <br> **NADI,** | **NBCUNIVERSAL MEDIA, LLC** |
| **Defendants.** | |

Defendant NBCUniversal Media, LLC ("NBC") hereby respectfully submits this memorandum in support of its motion to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### PRELIMINARY STATEMENT

This case arises from an online news report published by NBC (the "News Report") about Plaintiff Catelin Clobes, a Minnesota woman who became an outspoken anti-vaccine activist after her six-month-old baby tragically died. The News Report, published on September 24, 2019, places Clobes's story within a broader narrative about anti-vaccine activists partnering with grieving parents and drawing them into the cause. It tells Clobes's story in detail and presents both her perspective about vaccines causing her daughter's death, as well as contradictory evidence.

Clobes filed suit against NBC for defamation, "emotional distress," and "reasonable care," alleging that NBC's News Report contained factual errors that harmed her reputation. Her Complaint appears to challenge 19 statements.

For several independent and overlapping reasons, her claims fail as a matter of law.  First and foremost, she commenced her lawsuit after the statute of limitations had expired.  And while the Court therefore does not need to consider this case on the merits, Clobes's claims come up short on substance as well, as discussed below.  For these reasons, Clobes's Complaint fails to state a claim as a matter of law and should be dismissed with prejudice.

## STATEMENT OF FACTS[1]

On March 1, 2019, Plaintiff Catelin Clobes's baby daughter, Evee, tragically died. Compl. ¶ 1.  The following day, Clobes "shared her story via a Facebook post" that "ask[ed] for advice and similar stories."  *Id.* ¶ 49.  The post, referenced within the Complaint, allegedly received more than 12,000 reactions.  *Id.* ¶ 50.  As Clobes endeavored to "determine the cause of her daughter's death," she interacted on social media with people "from the 'health freedom' community."  *Id.* ¶ 1.  She also "put up one billboard in Minnesota," which she allegedly paid for.  *Id.* ¶¶ 1, 7.  Photographs of this billboard, as well as another very similar billboard, are included in NBC's News Report, "*How anti-vaxxers target grieving moms and turn them into crusaders against vaccines*," which Clobes now claims defamed her.  That News Report is attached to the Declaration of Leita Walker ("Walker Decl.") as Exhibit A.[2]

---

[1] For purposes of this motion, NBC presents the facts as they are alleged in Clobes's Complaint, though it does not concede their accuracy.

[2] The Court may properly consider the news report because it is "integral" to the Complaint and referenced within it.  *Gardner v. Monco*, 2005 U.S. Dist. LEXIS 39730, at *9 n.2 (D. Minn. Nov. 16, 2005).

I.    **THE CHALLENGED NEWS REPORT**

NBC published the News Report on September 24, 2019, about six months after

Evee's death.  Compl. ¶ 2; Walker Decl. Ex. A.  NBC respectfully encourages the Court

to read the News Report, which speaks for itself, in full, and summarizes it as follows:

The News Report opens with a description and photo of a billboard of Evee.  The

first paragraph reads:

> Fifteen miles west of Minneapolis, a billboard looms over a field of tall
> grass beside Highway 55.  The sign features a photo of Evee Clobes, a baby
> girl with sparkling eyes, flushed cheeks and an expression frozen in
> wonder.  Next to her face are the words, "HEALTHY BABIES DON'T
> JUST DIE."  The web address of a group opposed to mandatory
> vaccinations is at the bottom [HealthChoiceMN.com].

Walker Decl. Ex. A at 1-2.

Further down, the News Report includes a photo of a second billboard.  This

billboard displays a photo of a baby's chunky legs with bandaids on them.  It contains the

same text as the first billboard, including Evee's name and HealthChoiceMN.com.  *Id.* at

9.  The News Report explains Evee's death as "Clobes tells it"—a story that, in the six

months following Evee's death, had been "told at protests, read aloud at statehouses, and

offered up by her mother and other activists as proof of the horror vaccines can bring."

*Id.* at 2.  As this story is told, when Evee was six months old, she had a checkup and

received "several vaccinations."  *Id.*  Thirty-six hours later, she died.  The News Report

states that "Clobes and an army of online activists now say the vaccines caused Evee's

death."  It continues:

> That belief, and Clobes' willingness to make Evee part of a national media
> campaign, have turned the grieving mom into a rising star in the anti-

vaccination world.  Her Facebook posts draw hundreds of thousands of views, and multiple fundraisers set up by anti-vaccination activists on her behalf have raised tens of thousands of dollars.  She has become a champion of other anti-vaccination parents around the country.

*Id.*

The News Report then goes on to discuss a counter-narrative, supported by evidence that conflicts with Clobes's claims:  "[Clobes's] local medical examiner has ruled that the evidence — collected in an autopsy and by first responders — shows Evee accidentally suffocated while co-sleeping with her mother."  *Id.*  It explores in detail the circumstances of Evee's death:

> Catelin Clobes spent the night of Feb. 28 as she did most others — with Evee. Clobes breastfed Evee to sleep and set her down in the queen bed they shared, according to the Wright County Sheriff's report.  Clobes then had a whiskey cocktail, watched some basketball and, a few hours later, lay down beside Evee, according to the report.
>
> When Clobes woke up the next morning, Evee didn't stir and she was cold to the touch, Clobes told investigators.
>
> Distraught, Clobes called 911.  "This can't be real," Clobes told the operator, according to a transcript of the call.  "This is because she was sleeping with me."
>
> According to reports by a detective who examined Evee at the scene and the medical examiner who performed Evee's autopsy, the skin on Evee's face had creases that looked like they could have come from a blanket. Areas of her nose, chest, arms and legs were discolored and pooled with blood, indicating Evee had been face-down for some time.
>
> The medical examiner initially found the cause of death to be "undetermined," with co-sleeping with an adult as a "significant condition." Three months later, at Clobes' request, the same examiner reviewed the case and amended the cause of death to positional asphyxia, or suffocation.
>
> "There are no scene or autopsy findings and no scientific literature to support vaccination as a cause of, or contributor to, Evee's death," the

Wright County medical examiner, Dr. A. Quinn Strobl, wrote in a June letter explaining the official change to Clobes.

Clobes rejected these findings in an interview with NBC News.

"I safely co-slept with my daughter, that has nothing to do with her death," she said via Facebook Messenger.

The day after Evee died — before the medical examiner had issued any findings — Clobes started pouring out her heartbreak and confusion on Facebook.

"This feeling of pain is indescribable," Clobes wrote next to a video of Evee laughing that has now been viewed over half a million times and attracted 3,000 comments. "The unanswered questions of how or why make it worse."

*Id.* at 3-5.

The News Report then describes how anti-vaccine activists, to further their cause, pursue parents of children who have died unexpectedly and began interacting with Clobes on Facebook. It explains that "a local activist helped Clobes set up a fundraiser through GoFundMe with the goal of raising $5,000 for a 'private autopsy' and other expenses related to Clobes' quest for answers. (Clobes has received more than $22,000 and has raised the goal to $40,000.)." *Id.* at 7. The News Report notes that in August 2019, "Clobes registered the Justice For Evee Organization as a nonprofit in Minnesota and began soliciting donations." *Id.* at 8. And it explains that Clobes was using her "growing platform" to tell other family's stories in addition to her own. It further states that Clobes garnered the support of Health Choice Minnesota, the "local arm" of a national anti-vaccine organization, which "paid for two Evee billboards outside Minneapolis." *Id.*

The News Report also notes that, in September 2019, just a couple of weeks before NBC published the News Report, "Clobes appeared on nationally known anti-

vaccination advocate Del Bigtree's online talk show, 'The HighWire.'  Clobes hinted she

might sue the Wright County medical examiner over a 'cover-up.'"  *See id.* at 10; *see*

*also Ex-Vax Files: A Mother in Mourning* at 22:33, TheHighWire.com (Sept. 12, 2019),

*available at* https://thehighwire.com/videos/ex-vax-files-a-mother-in-mourning/

(hereafter referred to as the "HighWire Interview").[3]

The final section of the News Report, "'Where's the proof?,'" states that

"[m]ultiple studies and scientific reviews have shown that while serious reactions from

vaccines are possible, they are extremely rare."  Walker Decl. Ex. A at 13.  Returning to

Clobes's story, it explains that "[t]he latest venue for Evee's story has been California,

where anti-vaccination activists have been protesting legislation that closed medical

exemption loopholes in the state's vaccine law."  *Id.*  Earlier the same month the News

Report was published, Clobes posted on social media in opposition to the California bill,

sharing a photo of Evee and claiming "that there's been 'a huge cover-up' surrounding

her death."  *Id.*

---

[3] On a motion to dismiss, the Court may properly consider not only materials embraced
by the pleadings but also materials subject to "judicial notice under Federal Rule of
Evidence 201."  *In re Resideo Techs., Inc., Sec. Litig.*, 2021 U.S. Dist. LEXIS 60883, at
*7-9 (D. Minn. Mar. 30, 2021).  The Court may consider the HighWire Interview on
either or both of these grounds.  First, the HighWire Interview is explicitly referenced
in the News Report and is central to certain of the challenged statements, as discussed
below.  Second, although Clobes disputes NBC's characterization of what she said during
the HighWire Interview, she has not denied that she gave the interview.  Third, the
interview is publicly available online and its existence "cannot reasonably be
questioned."  Fourth, the HighWire Interview is not offered for its truth but rather solely
to show Clobes made certain statements before the News Report was published.

II.   **CLOBES'S LAWSUIT**

In a Complaint filed on September 24, 2021, Clobes asserts claims for defamation, "emotional distress," and "reasonable care."  She alleges that the News Report is "replete with errors of fact," Compl. ¶ 7 (listing statements), and "false statements," *id.* ¶ 8 (listing additional statements).[4]  The 19 statements Clobes appears to put in issue are compiled in a chart on pages 13-20 of this memorandum. That chart lists the statements as Clobes pleads them (many of them she has paraphrased rather than quoted directly) and the corresponding passages of the News Report.

Clobes filed this lawsuit on September 24, 2021—two years to the day after the News Report was published.  She seeks ten million dollars in compensatory damages in connection with her defamation claim, two hundred million dollars in punitive damages, and additional damages in an amount to be determined at trial.

Clobes did not serve her Complaint on NBC until December 23, 2021, exactly 90 days after filing it with the Court.  *See* Fed. R. Civ. P. 4(m) (providing for dismissal if defendant is not served within 90 days after complaint is filed).  To date, Clobes has not served the individual defendants.  They therefore have not appeared in this case and do not formally join in this motion.  On February 9, 2022, Magistrate Judge Docherty

---

[4] In these paragraphs and others, Clobes relies on a "Declaration of Robert J. Fisher," but she does not appear to have filed this declaration with the court.

entered a Report and Recommendation recommending that the individual defendants be "dismissed without prejudice."  Dkt. 19.[5]

## ARGUMENT

To survive a motion to dismiss, a complaint must state a claim for relief "that is plausible on its face."  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  To state a plausible claim, a plaintiff must allege "factual content" that would allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Iqbal*, 556 U.S. at 678).  Courts take all of the facts alleged in the complaint as true for purposes of a motion to dismiss, but the complaint "must provide more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" to avoid dismissal.  *E. Coast Test Prep LLC v. Allnurses.com, Inc.*, 307 F. Supp. 3d 952, 962 (D. Minn. 2018) (quoting *Iqbal*, 556 U.S. at 678); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Clobes's lawsuit is plainly time barred and must be dismissed with prejudice for that reason alone.  Even if her lawsuit were timely, however, her Complaint fails to state a claim on the merits, for a variety of reasons discussed below.

---

[5] In the event the individual defendants are not ultimately dismissed pursuant to Fed. R. Civ. P. 4(m), the arguments raised herein apply equally to all defendants, and the Court should dismiss the case against all defendants with prejudice.

I.      **CLOBES'S LAWSUIT IS TIME BARRED.**

    A.      **Minnesota's Two-Year Statute of Limitations
on Clobes's Claims Expired Before She Commenced Suit.**

This case is plainly time barred under *Larsen v. Mayo Medical Center*, 218 F.3d 863 (8th Cir. 2000).  Under this controlling Eighth Circuit precedent, where federal jurisdiction is based on diversity, as it is here, "Minnesota's substantive law, including its statute of limitations, applies." *Id.* at 866.  Moreover, "state commencement rules apply because they are 'part and parcel of the statute of limitations.'"  *Id.* at 867; *see also Fredin v. City Pages*, 2020 U.S. Dist. LEXIS 101236, at *16 (D. Minn. May 19, 2020).

In Minnesota, a civil action is commenced "*when the summons is served upon that defendant.*"  Minn. R. Civ. P. 3.01 (emphasis added); *Larsen*, 218 F.3d at 867 (citing and analyzing an earlier version of Rule 3.01); *see also Wallin v. Minn. Dep't of Corr.*, 598 N.W.2d 393, 400 (Minn. Ct. App. 1999) (action is commenced when summons is served upon the defendant).  This means that, under Minnesota law, as applied by the Eighth Circuit, the operative act by which a lawsuit's timeliness is judged is not filing, but is instead service, of that lawsuit.  Filing a complaint simply has no effect on the running of the statute of limitations under Minnesota law.  *See Larsen*, 218 F.3d at 866-68; *Fredin*, 2020 U.S. Dist. LEXIS 101236, at *16.

Under Minnesota law, Clobes was required to commence her defamation action within two years of publication of the News Report.  Minn. Stat. § 541.07(1); *Wild v. Rarig*, 234 N.W.2d 775 (Minn. 1975).  The same is true for Clobes's claims for emotional distress and reasonable care, to the extent those counts assert recognized

causes of action at all.  *See* Minn. Stat. § 541.07(1) (codifying two-year statute of limitations for any "other tort resulting in personal injury"); *Christenson v. Argonaut Ins. Cos.*, 380 N.W.2d 515, 518 (Minn. Ct. App. 1986) (two-year statute of limitations governs actions for intentional infliction of emotional distress).

Here, NBC published the News Report on September 24, 2019.  NBC was not served—and thus the lawsuit was not commenced under Minnesota law—until December 23, 2021, more than two years later.  As discussed above, all three of Clobes's claims are subject to Minnesota's two-year statute of limitations.  Clobes thus failed to commence litigation until it was three months too late.  Her claims are time barred and must be dismissed with prejudice on this independent basis alone.[6]

### B.    Minnesota's COVID-19 Suspension Provision Does Not Impact the Expiration of the Statute of Limitations in This Case.

Based on conversations with Clobes's counsel, NBC expects her to argue that the statute of limitations was "tolled" during the COVID-19 pandemic and that her lawsuit is therefore timely. Although other states may have tolled their statutes of limitations, Minnesota did not—it merely *suspended* the expiration of deadlines that would have

---

[6] Clobes's claims for emotional distress and reasonable care are time barred for the separate and independent reason that they are predicated on her defamation claim.  *See Wallin*, 598 N.W.2d at 406 (dismissing negligent infliction of emotional distress claim predicated on defamation claims that were either time-barred or barred by qualified privilege) (*cited by Jones v. Indep. Sch. Dist. No. 720*, No. C9-02-1205, 2003 Minn. App. LEXIS 350, at *8-9 (Minn. Ct. App. Apr. 1, 2003) ("[I]f the predicate tort is barred by the statute of limitations or by qualified immunity, the NIED claim cannot survive.")); *see also Covey v. Detroit Lakes Printing Co.*, 490 N.W.2d 138, 144 (Minn. Ct. App. 1992) (same).

otherwise expired during the first year of COVID-19—and this anticipated argument thus has no merit.

In response to COVID-19, the Minnesota legislature enacted a session law providing that "deadlines imposed by statutes governing proceedings in the district and appellate courts, including any statutes of limitations or other time periods prescribed by statute, *shall not expire* from the beginning of the peacetime emergency declared on *March 13, 2020 . . . through April 15, 2021*." 2021 Minn. H.F. No. 114, Art. I, Sec. 16(a) (the "COVID-19 suspension law" or "suspension law") (emphasis added). This law was approved by the Governor on February 12, 2021 and went into effect well before Clobes filed this action and untimely served defendants.

Even assuming the suspension law applies in federal court, the statute of limitations on Clobes's claims expired on September 24, 2021, two years after the News Report was published, and that expiration date falls well beyond the date range provided by the suspension law. The running of the statute of limitations here was thus not suspended, or impacted at all, by the suspension law. Clobes's claims are therefore untimely for the reasons discussed above and must be dismissed with prejudice.

## II.   EVEN IF CLOBES'S LAWSUIT WERE NOT TIME BARRED, SHE HAS NOT—AND CANNOT—STATE A DEFAMATION CLAIM.

Because the statute of limitations has expired on all of Clobes's claims, it is not necessary for the Court to analyze the merits of this case. However, for the sake of completeness on a Rule 12(b)(6) motion, the remainder of this brief explains why, even if

Clobes had timely commenced this lawsuit, her Complaint would be subject to dismissal under Rule 12(b)(6).

To state a defamation claim, a plaintiff must plead: "(1) a false and defamatory statement about [her]; (2) an unprivileged publication to a third party; (3) a tendency to harm the plaintiff's reputation in the community; and (4) fault amounting to at least negligence." *Stepnes v. Ritschel*, 663 F.3d 952, 963 (8th Cir. 2011) (citing *Britton v. Koep*, 470 N.W.2d 518, 520 (Minn. 1991)); *see also Larson v. Gannett Co.*, 940 N.W.2d 120, 131 (Minn. 2020) (quoting *McKee v. Laurion*, 825 N.W.2d 725, 729-30 (Minn. 2013)). On the fault element, a plaintiff who is a public official or public figure[7] must plead, and eventually prove by clear and convincing evidence, "that the defendant's fault amounted to actual malice." *Stepnes*, 663 F.3d at 963.[8]

---

[7] Given the procedural posture of this Motion, NBC does not ask the Court to adjudicate plaintiff's status as a public or private figure at this time. However, because plaintiff has willingly thrust herself to the forefront of, and become a vocal advocate for, the anti-vaccine movement, she is undoubtedly a limited purpose public figure for purposes of this lawsuit. In the unlikely event this case survives this Motion, NBC will therefore argue on summary judgment that plaintiff has failed to meet her burden of proof on the element of NBC's alleged fault—*i.e.*, that she cannot prove NBC published the News Report with "with reckless disregard for truth" or with "a high degree of knowledge of the statements' probable falsity." *Diesen*, 455 N.W.2d at 452-53. NBC's decision to hold those arguments in reserve should in no way be construed as a concession that plaintiff is a private figure or that she has pleaded or can prove actual malice.

[8] Moreover, even private figure plaintiffs must plead and prove actual malice to recover punitive damages. *Jadwin*, 367 N.W.2d at 483 (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349 (1974)); *Jacobson v. Rochester Commc'ns Corp.*, 410 N.W.2d 830, at 836 n.7 (Minn. 1987). Plaintiff has not adequately pleaded this degree of fault and thus her claim for such punitive damages must be dismissed even if other aspects of her lawsuit somehow survive.

Clobes bases her claim on 19 purportedly false statements, *see* Compl. ¶¶ 7-8;

which are listed and enumerated in the following chart:

| Statement Number | Challenged Statement Found in Complaint | Actual Statement in News Report |
|---|---|---|
| 1 | "Stated that the baby received several vaccinations. (The baby had six vaccinations)"<br><br>Compl. ¶ 7. | "Evee's story, as her mother Catelin Clobes tells it, is of a healthy 6-month-old who died 36 hours after a checkup where she got several vaccinations."<br><br>Walker Decl. Ex. A at 2. |
| 2 | "Stated that the detective examined the baby at her home. (It was at the hospital.)"<br><br>Compl. ¶ 7. | "According to reports by a detective who examined Evee at the scene and the medical examiner who performed Evee's autopsy . . . ."<br><br>Walker Decl. Ex. A at 4. |
| 3 | "Stated that tissue samples were retained by Wright County. (It was Anoka County.)"<br><br>Compl. ¶ 7. | "For the autopsy — more precisely, a study of tissue samples retained by Wright County . . . ."<br><br>Walker Decl. Ex. A at 7. |

| | | |
|---|---|---|
| 4 | "Stated that within hours after posting her feelings on Facebook (early March), she received answers. (She didn't get conclusive medical answers until August of 2020.)"<br><br>Compl. ¶ 7. | "Clobes' grief and Evee's giggle were like a siren, attracting dozens of family and friends, and then hundreds and thousands of strangers offering condolences in the comments.<br><br>Within hours of her post, some had answers.<br><br>'Vaccine injury is real and a movement is spreading across the nation,' one woman wrote. 'Organizations are filled with people and parents who understand what you are going through and can help offer guidance and support to you.'"<br><br>Walker Decl. Ex. A at 5. |
| 5 | "Stated that Health Choice Minnesota paid for two baby billboards outside of Minnesota. (At the time the article was published, there was only one billboard in Minnesota, which she paid for.)"<br><br>Compl. ¶ 7. | "A separate Evee-branded campaign was launched by Health Choice Minnesota, the local arm of American Citizens for Health Choice, a national anti-vaccine organization that raised nearly half a million dollars from 2012 to 2017, according to federal tax returns. Health Choice Minnesota paid for two Evee billboards outside Minneapolis, and the signs steer onlookers to the group's website, which has a donate option 'to fund legal fees as well as public education & support campaigns.'"<br><br>Walker Decl. Ex. A at 9-10. |

| 6 | "Stated that she was open to anti-vaccine messages aimed at her. (Prior to the article she was only focused on determining cause of death. She was 'open' to 'vaccines causing sudden infant death syndrome & the truth about them, not 'anti-vaccine' messages)."  Compl. ¶ 7. | "Clobes seemed open to the anti-vaccine messages aimed at her. A day after her initial post, she was attaching updates, urging others with stories of health scares after infant vaccinations to get in touch.  Within a week of her daughter's death, Clobes had joined Stop Mandatory Vaccination's 169,000-member closed Facebook group, filed a report with the Vaccine Adverse Event Reporting System, the federal government's vaccine safety surveillance program, and retained a lawyer. The Stop Mandatory Vaccination website published an article about Clobes."  Walker Decl. Ex. A at 7. |
|---|---|---|
| 7 | "Stated that Plaintiff said on social media that Dr. Miller would be doing her study. (She was actually trying to keep his role private. Zadrozny subsequently admitted that the source for this information in fact came from a Dr. Ron Kennedy, not social media,)"  Compl. ¶ 7. | "For the autopsy — more precisely, a study of tissue samples retained by Wright County — Clobes' lawyer hired Dr. Douglas Miller, a clinical professor of pathology at the University of Missouri and one of the few mainstream medical professionals anti-vaccination activists seem to respect. He has served as an expert witness for parents who filed lawsuits claiming vaccines triggered SIDS in their children. Clobes said on social media that Miller would be doing the study."  Walker Decl. Ex. A at 7. |

| 8 | "Stated 'Areas of the nose, chest, arms and legs were discolored and pooled with blood, indicating Evee had been face-down for some time.' Errors in that sentence, include:<br><br>▪ There was no reference to legs in the investigative report.<br>▪ Both arms did not have pooling of blood, only the right arm.<br>▪ While the chest did have pooling of blood, the cause was lividity, not being face-down.<br>▪ The area of the nose had white pressure markings not pooling of blood. (Clobes contends that the reporters took this information from the "falsified" letter written to her by medical examiner for which she is now under investigation by the medical board.)"<br><br>Compl. ¶ 7. | "According to reports by a detective who examined Evee at the scene and the medical examiner who performed Evee's autopsy, the skin on Evee's face had creases that looked like they could have come from a blanket. Areas of her nose, chest, arms and legs were discolored and pooled with blood, indicating Evee had been face-down for some time."<br><br>Walker Decl. Ex. A at 4 . |
| 9 | "Stated there was a 'separate Evee-branded campaign.' (There was no campaign before article.)"<br><br>Compl. ¶ 8. | "A separate Evee-branded campaign was launched by Health Choice Minnesota, the local arm of American Citizens for Health Choice, a national anti-vaccine organization that raised nearly half a million dollars from 2012 to 2017, according to federal tax returns."<br><br>Walker Decl. Ex. A at 9. |

| 10 | "Stated her Facebook page draws hundreds of views. (Can't be determined)." <br><br> Compl. ¶ 8. | "Her Facebook posts draw hundreds of thousands of views, and multiple fundraisers set up by anti-vaccination activists on her behalf have raised tens of thousands of dollars." <br><br> Walker Decl. Ex. A at 2. |
| 11 | "*'Clobes ….now say that vaccines caused Evee's death.'* (She never made that assertion at the time the article was published because she hadn't yet received test results from the medical professionals.)" <br><br> Compl. ¶ 8. | "Evee's story, as her mother Catelin Clobes tells it, is of a healthy 6-month-old who died 36 hours after a checkup where she got several vaccinations. Clobes and an army of online activists now say the vaccines caused Evee's death. That belief, and Clobes' willingness to make Evee part of a national media campaign, have turned the grieving mom into a rising star in the anti-vaccination world." <br><br> Walker Decl. Ex. A at 2. |
| 12 | "*'Evee had been face down for some time.'* (There was no medical or investigative report that made that conclusion and Clobes reports she had expert reports stating the exact opposite.)" <br><br> Compl. ¶ 8. | "According to reports by a detective who examined Evee at the scene and the medical examiner who performed Evee's autopsy, the skin on Evee's face had creases that looked like they could have come from a blanket. Areas of her nose, chest, arms and legs were discolored and pooled with blood, indicating Evee had been face-down for some time." <br><br> Walker Decl. Ex. A at 4. |

| 13 | *"'Three months later, at Clobes' request, the same examiner reviewed the case and amended the cause of death to positional asphyxia or suffocation.'* (She never asked the examiner to review the case because she disputed her original findings and was seeking an independent test/study. Also, in no official report of any kind has the word 'suffocation' ever been used.)"<br><br>Compl. ¶ 8. | "The medical examiner initially found the cause of death to be 'undetermined,' with co-sleeping with an adult as a 'significant condition.' Three months later, at Clobes' request, the same examiner reviewed the case and amended the cause of death to positional asphyxia, or suffocation.<br><br>'There are no scene or autopsy findings and no scientific literature to support vaccination as a cause of, or contributor to, Evee's death,' the Wright County medical examiner, Dr. A. Quinn Strobl, wrote in a June letter explaining the official change to Clobes."<br><br>Walker Decl. Ex. A at 4. |
| --- | --- | --- |
| 14 | *"'Clobes hinted she might sue the Wright County Medical Examiner over a 'cover up.'* (She never planned to do so or ever expressed that she was considering it. Also the medical examiner was with the Midwest Medical Examiner's Office in Anoka County, not Wright.)"<br><br>Compl. ¶ 8. | "In September, Clobes appeared on nationally known anti-vaccination advocate Del Bigtree's online talk show, 'The HighWire.' Clobes hinted she might sue the Wright County medical examiner over a 'cover-up.' Bigtree interspersed his interview with Clobes with home videos of Evee and a re-enactment of her death."<br><br>Walker Decl. Ex. A at 10. |

| 15 | "*'Clobes has received more than $22,000 and has raised to goal to $40,000.'* (She never had a 'goal' of any kind and had never expressed having one. She also didn't even start or run the fundraiser mentioned in the article or 'raise the amount'.)"<br><br>Compl. ¶ 8. | "Within a week of her daughter's death, Clobes had joined Stop Mandatory Vaccination's 169,000-member closed Facebook group, filed a report with the Vaccine Adverse Event Reporting System, the federal government's vaccine safety surveillance program, and retained a lawyer. The Stop Mandatory Vaccination website published an article about Clobes.<br><br>The next week, a local activist helped Clobes set up a fundraiser through GoFundMe with the goal of raising $5,000 for a 'private autopsy' and other expenses related to Clobes' quest for answers. (Clobes has received more than $22,000 and has raised the goal to $40,000.)"<br><br>Walker Decl. Ex. A at 7. |
| --- | --- | --- |
| 16 | "*'Her face and chunky legs – adorned with Band-Aids from her shots – are featured on anti-vaccination ....billboards.'* (There was only one billboard - not multiple - at the time the article was published and there was no mention of 'vaccinations' anywhere on the billboard.)"<br><br>Compl. ¶ 8. | "Since her death in March, Evee has served as a literal poster child for the anti-vaccination movement. Her face and chunky legs — adorned with Band-Aids from her shots — are featured on anti-vaccination websites and billboards."<br><br>Walker Decl. Ex. A at 1-2. |

| 17 | "'In August, she registered the Justice for Evee Organization as a nonprofit in Minnesota and began soliciting donations.' Three false statements in this one sentence:<br><br>- She has never registered an organization of any kind.<br>- The organization is not a nonprofit organization (or business) in Minnesota or anywhere.<br>- She didn't personally solicit donations, others did."<br><br>Compl. ¶ 8. | "Clobes continued, and expanded, her advocacy after receiving Miller's report. In August, she registered the Justice For Evee Organization as a nonprofit in Minnesota and began soliciting donations. Through her website, Clobes also sells Evee-themed merchandise, including T-shirts, bumper stickers and pins, with proceeds slated to go to anti-vaccine advocacy in Minnesota and beyond."<br><br>Walker Decl. Ex. A at 8. |
|---|---|---|
| 18 | "'(donations)…with proceeds slated to go to anti-vaccine advocacy in Minnesota and beyond.' (She did not even begin to receive donations through the website until the year after the article was published, 2020, and those donations were never for 'Minnesota and beyond.' All money received from donations prior to the article being published was for pathology and legal fees related to determining the cause of the baby's death.)"<br><br>Compl. ¶ 8. | "Clobes continued, and expanded, her advocacy after receiving Miller's report. In August, she registered the Justice For Evee Organization as a nonprofit in Minnesota and began soliciting donations. Through her website, Clobes also sells Evee-themed merchandise, including T-shirts, bumper stickers and pins, with proceeds slated to go to anti-vaccine advocacy in Minnesota and beyond."<br><br>Walker Decl. Ex. A at 8. |
| 19 | _"'Clobes rejected these findings in an interview with NBC News.'_ (She never 'rejected the findings' because the pathology study was still in progress at the time and no conclusions had been reached at that time. She never did an 'interview' with NBC News.'"<br>Compl. ¶ 8. | "'There are no scene or autopsy findings and no scientific literature to support vaccination as a cause of, or contributor to, Evee's death,' the Wright County medical examiner, Dr. A. Quinn Strobl, wrote in a June letter explaining the official change to Clobes.<br>Clobes rejected these findings in an interview with NBC News."<br>Walker Decl. Ex. A at 4. |

For several independent and overlapping reasons, none of the challenged statements are actionable:  Many of the statements are not "of and concerning" Clobes.  Even if they are, her Complaint fails to set forth plausible allegations that any of the challenged statements are defamatory or materially false.  Finally, several statements are fair and accurate reports of official documents and are thus protected by Minnesota's fair report privilege.  For each of these independent and overlapping reasons, Clobes's Complaint fails to state a claim as a matter of law.

**A.    Numerous Challenged Statements Are Not "Of and Concerning" Clobes.**

"Defamatory words, to be actionable, must refer to some ascertained or ascertainable person and that person must be the plaintiffs."  *See Schlieman v. Gannett Minn. Broad., Inc.*, 637 N.W.2d 297, 306 (Minn. Ct. App. 2001) (quoting *Brill v. Minn. Mines*, 274 N.W. 631, 633 (Minn. 1937)).  Often referred to as the "of and concerning" element of a defamation claim, whether a statement is about the plaintiff is a question of law for the Court and is properly decided at the motion to dismiss stage.  *See, e.g.*, *Brimelow v. New York Times Co.*, 2020 U.S. Dist. LEXIS 237463, at *24-28 (S.D.N.Y. 2020) (granting motion to dismiss and concluding that certain challenged statements were "not 'of and concerning' Plaintiff as a matter of law"), *aff'd on other grounds*, 2021 U.S. App. LEXIS 31672 (2d Cir. Oct. 21. 2021).

Several of the challenged statements (including but not necessarily limited to statements 1-3, 5, 9, and 16) do not meet this threshold "of and concerning" requirement.

These statements do not mention Clobes and relate to inconsequential facts that have nothing to do with her conduct or actions. For instance, statement 1 asserts that Clobes's daughter had "six vaccinations," as opposed to "several vaccinations." Statements such as this are plainly not a reflection on Clobes. Such statements cannot serve as a basis for liability, and the Complaint fails to state a claim for defamation to the extent it is relies on these statements.

      **B.**     **The Challenged Statements Are Not Defamatory.**

Whether a statement is "capable of carrying a defamatory meaning" is also a question of law for the Court. *Schlieman*, 637 N.W.2d at 308; *McKee*, 825 N.W.2d at 731. And, like the of and concerning element, it is properly decided at the motion to dismiss stage. *See, e.g.*, *Price v. Viking Press, Inc.*, 625 F. Supp. 641, 644 (D. Minn. Dec. 30, 1985) (concluding that statements "must be dismissed for, as a matter of law, they cannot be reasonably construed as defaming the plaintiff").

"Words are defamatory when they tend to injure the plaintiff's reputation and expose the plaintiff to public hatred, contempt, ridicule, or degradation." *Church of Scientology of Minn. v. Minn. State Med. Ass'n Found.*, 264 N.W.2d 152, 155 (Minn. 1978); *see also* 1 Robert D. Sack, Sack on Defamation: Libel, Slander, and Related Problems § 2:4.1 (5th ed. 2017) ("There is common agreement that a communication that is merely unflattering, annoying, irksome, or embarrassing, or that hurts only the plaintiff's feelings, is not actionable."). Whether a statement conveys a defamatory meaning "depends upon how an ordinary person understands the language used in the light of surrounding circumstances and the words must be construed as a whole without

taking any word or phrase out of context." *Larson*, 940 N.W.2d at 146 (internal quotations omitted). A writing that conveys "conflicting" sides of an issue or a "disagreement" does not carry a defamatory meaning, even if one side reflects poorly on plaintiff, unless the writing makes a false statement of fact about the plaintiff. *Schlieman*, 637 N.W.2d at 308.

As a matter of law, *none* of the statements at issue in this case can "possibly have a defamatory meaning" because, read in context, they are not capable of exposing Clobes to the "public hatred, contempt, ridicule, or degradation" that makes for an actionable claim. *Church of Scientology*, 264 N.W.2d at 155. Granted, the anti-vaccine movement can evoke strong opinions, and some may hold its adherents in disregard. But Clobes does not deny she is an anti-vaccine activist. Rather, she picks at small details that (even if false, which they are not) have no impact her reputation. For example, Clobes alleges statement 4 is defamatory because she didn't receive "conclusive medical answers" until after the News Report's publication, whereas the News Report noted that some people offered "answers" having to do with vaccines within "hours" of her post the day after Evee's death. As another example, she challenges statements 1 through 3 for stating that Evee received "several" vaccinations (instead of six), that she was examined at Clobes's home (instead of the hospital), and that tissue samples were retained by Wright County (not Anoka County). Again, nothing about these statements have a defamatory meaning or effect. Meanwhile, the News Report as a whole portrays Clobes as a grieving mother who has a theory about the cause of her daughter's untimely death that appears to have been heavily influenced by the anti-vaccine movement. While Clobes apparently

believes the News Report is unflattering, neither the discrete statements put in issue nor the overall gist and sting of the News Report defame her, as a matter of law.

### C.    The Challenged Statements Are Not Materially False.

Clobes carries the burden of pleading and proving falsity.  *McKee*, 825 N.W.2d at 730.  If a challenged statement "is true in substance, minor inaccuracies of expression or detail are immaterial."  *Id.* (citing *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516 (1991)).  "Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge [is] justified."  *Id.* (quoting *Masson*, 501 U.S. at 517) (internal quotations omitted)).  In other words, a statement is substantially true "if it would have the same effect on the mind of the reader or listener as that which the pleaded truth would have produced."  *Id.* at 730-31 (concluding that whether a specific percentage referenced in a statement was true or false did not matter because the "gist or sting" was the mentioning of patients with a certain medical condition dying and "not the percentage referenced").

Here, the gist of the News Report, as it relates to Clobes, is that she has become an outspoken anti-vaccine activist following the tragic death of her daughter Evee—and that a controversy exists as to whether vaccines in fact played a role in Evee's death.  Clobes does not dispute any of this.  Instead, she parses immaterial alleged inaccuracies.  Taking her allegations as true for purposes of this motion (though NBC disputes them), the "substance, the gist, the sting" of *all* of the statements she alleges are false is no different from the effect of the truth.  *See McKee*, 825 N.W.2d at 730.

Further, even if the Court were to examine the challenged statements in isolation rather than within the context of the overall gist of the News Report, *none* of them are materially false, just as *none* of them are defamatory.  Indeed, Clobes concedes many of the challenged statements are true. For example, she concedes the truth of statements 5-6, 9, 11, 16, and 18, but complains they only became true after the News Report's publication.  For example, regarding statement 18, she states that "[s]he did not even being to receive donations through the website until the year after the article was published," though she does not dispute receiving donations.  Even if that's the case (and NBC does not concede it is), the timing of the alleged events carries no legal significance where a plaintiff concedes that the "gist" of a challenged statements is true, as Clobes does here.

Additionally, Clobes's allegations regarding statements 11, 14, and 17 are directly contradicted by materials that the court can properly consider on a motion to dismiss.  *See supra* note 3.  For example, regarding statement 11, she asserts that, at the time NBC published the News Report, she had not said that vaccines caused Evee's death. However, in the HighWire Interview that Clobes gave weeks prior to the News Report's publication, she bluntly stated: "My daughter died of vaccinations."  *See* HighWire Interview at 14:45.  Similarly, regarding statement 14, she asserts that she never planned to sue the relevant medical examiner (and disputes whether NBC named the correct medical examiner's office) "or never expressed that she was considering it."  But in the HighWire interview, she stated: "We have a couple experts willing to testify in court against your [the medical examiner's] positional asphyxiation diagnosis. . . . Pretty much

saying you're lying, and you're doing this on purpose." *See id.* at 22:33.  Indeed, the HighWire Interview not only directly contradicts these two allegations, it also supports the "gist" of the News Report as a whole: that Clobes became an outspoken anti-vaccine activist following the sudden death of her daughter Evee—and that a controversy exists as to whether vaccines in fact played a role in Evee's death.  Finally, statement 17 is also contradicted by objective and verifiable evidence that may properly be considered on a motion to dismiss.  *See supra* note 3.  Regarding statement 17, Clobes states that she never registered a nonprofit organization called "Justice for Evee."  But Minnesota state incorporation records contradict this.  A nonprofit called the "Justice for Evee Organization" was incorporated on August 27, 2019.  Walker Decl. Ex. B (true and correct copy of the State of Minnesota's incorporation records for "Justice for Evee Organization").  This document lists Clobes as one of four registered agents.  (The organization was dissolved the following month.)

In sum, Clobes has failed to adequately plead material falsity regarding any of the challenged statements.  For this independent reason, her Complaint should be dismissed as a matter of law.

**D.    Minnesota's Fair Report Privilege Shields NBC from Liability for its Statements Based on Official Records.**

Finally, even if the challenged statements in Clobes's lawsuit were both false and defamatory (which they are not), many of them are privileged such that NBC cannot be held liable for their publication.

The fair and accurate reporting privilege is an exception to the rule of republisher liability—*i.e.*, that a publisher can be liable "for repeating the defamatory statements of another." *Larson*, 940 N.W.2d at 131.  The privilege applies to the publication of allegedly defamatory matter "concerning another in a report of an official action or proceeding . . . that deals with a matter of public concern," so long as "the report is accurate and complete or a fair abridgment of the occurrence reported." *Moreno v. Crookston Times Printing Co.*, 610 N.W.2d 321, 331 (Minn. 2000) (citing Restatement (Second) of Torts § 611); *see also Larson*, 940 N.W.2d at 131 (privilege applies to information communicated by law enforcement officers at a press conference and in a news release); *Moreno*, 610 N.W.2d at 332 (holding that the privilege applies to legislative proceedings); *Michaelis v. CBS, Inc.*, 119 F.3d 697, 701 (8th Cir. 1997) ("Minnesota law does not require a showing of actual reliance on the records of the prior proceeding before the privilege attaches.").

Statements 8, 12, 13, and 17 are shielded from liability by the fair report privilege because they are based on publicly-available official reports.  Statements 8, 12, and 13 are based on reports by law enforcement and the local medical examiner.  And statement 17 is based on state incorporation records.  Meanwhile, Clobes has not shown—and cannot show—that NBC abused or lost the privilege by failing to fairly and accurately summarize the official reports referenced in the News Report.  *See Larson*, 940 N.W.2d at 131.

*Statements 8 and 12.*  The passage from the News Report that corresponds with challenged statements 8 and 12 reads:  "According to reports by a detective who

examined Evee at the scene and the medical examiner who performed Evee's autopsy, the skin on Evee's face had creases that looked like they could have come from a blanket. Areas of her nose, chest, arms and legs were discolored and pooled with blood, indicating Evee had been face-down for some time."  Walker Decl. Ex. A at 4.

This passage is fully supported by an official and publicly-available letter from the Wright County Medical Examiner, which reads:  "All photos of Evee clearly show pooling of the blood over the front of her body and face, indicating that she was face-down in the bed when she died and for some time afterwards. . . . The examination by Detective Kramer specifically notes impressions on Evee's face due to being face down on blankets. . . . Given these scene and autopsy findings, the most accurate diagnosis is positional asphyxia."  *Id.* Ex. C (true and correct copy of June 26, 2019 letter from A. Quinn Strobl, M.D., Wright County Medical Examiner, to the plaintiff).

This passage is also fully supported by another official and publicly-available report from the Wright County Sheriff's Office, which reads:  "Evee . . . was showing pooling of the blood on the right arm and chest area. . . . White pressure areas on the face of Evee were consistent with a child that would have been on her face, showing in the chin, upper lip, and nose nose/bridge area."  *Id.* Ex. D at 5 (true and correct copy of report by the Wright County Sheriff's Office).  The News Report presents a fair and accurate report of these two official sources.

*Statement 13.*  Clobes states that, contrary to NBC's reporting, "[s]he never asked the examiner to review the case because she disputed her original findings and was seeking an independent test/study.  Also, in no official report of any kind has the word

'suffocation' ever been used."  Compl. ¶ 13.  But in fact, the letter by the Wright County

Medical Examiner to Clobes, referenced above, reads: "Thank you for your follow-up

communication regarding Evee's death investigation. . . Given these scene and autopsy

findings, the most accurate diagnosis is positional asphyxia. . . . [T]he death certificate

will not be amended to include vaccination."  Walker Decl. Ex. C.

*Statement 17.*  The passage from the News Report that corresponds with

challenged statement 17 reads:  "In August, she registered the Justice For Evee

Organization as a nonprofit in Minnesota and began soliciting donations."  *Id.* Ex. A at 8.

As discussed above, publicly-available Minnesota incorporation records show that a

nonprofit called the "Justice for Evee Organization" was incorporated on August 27,

2019.  *Id.* Ex. B.  Clobes is listed as one of four registered agents.  *Id.*

The News Report presents a fair and accurate report of these sources.  Clobes does

not allege that the report contradicted any of these official documents in any material

way.  For this independent reason, statements 8, 12, 13, and 17 should be eliminated as a

basis upon which NBC can be held liable.

## III.   Clobes's Other Claims, for Emotional Distress and Reasonable Care, Are Derivative of Her Defamation Claim and Fail as a Matter of Law.

As discussed above, the first two Counts of Clobes's Complaint are derivative

of— and therefore rise and fall with—her defamation claim.  Because her defamation

claim fails, so too do her other claims that are based on the same statements.

"[R]egardless of the specific tort being employed, the First Amendment applies when a

plaintiff seeks damages for reputational, mental, or emotional injury allegedly resulting

from the defendant's speech." *Snyder v. Phelps*, 580 F.3d 206, 218 (4th Cir. 2009), *aff'd*,

562 U.S. 443 (2011).  In addition, to the extent that Clobes's other two claims, for

"emotional distress" and "reasonable care," state a recognized cause of action at all, she

has not alleged facts sufficient that those claims can survive a motion to dismiss.

## CONCLUSION

For the foregoing reasons, NBC respectfully requests that this Court grant its

motion to dismiss Clobes's Complaint with prejudice.

Dated:  February 14, 2022                 BALLARD SPAHR LLP

                                           */s/ Leita Walker*
                                          Leita Walker (MN Bar No. 0387095)
                                          walkerl@ballardspahr.com
                                          2000 IDS Center
                                          80 South 8th Street
                                          Minneapolis, MN 55402-2119
                                          Telephone: 612.701.5192

                                          Leslie Minora (*pro hac vice*)
                                          minoral@ballardspahr.com
                                          1735 Market Street, 51st Floor
                                          Philadelphia, PA 19103-7599
                                          Telephone: 215.665.8500

                                          *Counsel for Defendant NBCUniversal*
                                          *Media, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **CATELIN CLOBES,** | **Civil Action No.** |
| | **21-cv-02117-PJS-FJD** |
| **Plaintiff,** | |
| **v.** | **LOCAL RULE 7.1** |
| | **CERTIFICATE OF COMPLIANCE** |
| **NBCUNIVERSAL MEDIA, LLC,** | |
| **BRANDY ZADROZNY, and ALIZA** | |
| **NADI,** | |
| **Defendants.** | |

I, Leita Walker, certify that the Memorandum of Law in Support of Defendants'
Motion to Dismiss Plaintiff's Complaint complies with Local Rule 7.1(f).

I further certify that, in preparation of the above document, I used Microsoft Word
2016 and that this word processing program has been applied specifically to include all
text, including headings, footnotes, and quotations in the following word count.   In
compliance with Local Rule 7.1(f)(C), the word count does not include the caption, the
signature block, or any certificates of compliance.

I further certify that the above document contains 7,997 words.

Dated: February 14, 2022                    BALLARD SPAHR LLP

                                            _/s/ Leita Walker_____
                                            Leita Walker (MN Bar No. 0387095)

                                            *Counsel for Defendant NBCUniversal
                                            Media, LLC*