UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CATELIN CLOBES,<br><br>Plaintiff,<br><br>v.<br><br>NBCUNIVERSAL MEDIA, LLC,<br><br>Defendant. | Civil Action No.<br>21-cv-02117-PJS-JFD<br><br><br>REPLY MEMORANDUM OF LAW<br>IN SUPPORT OF MOTION<br>TO DISMISS PLAINTIFF'S SECOND<br>AMENDED COMPLAINT BY<br>DEFENDANT NBCUNIVERSAL<br>MEDIA, LLC |

Defendant NBCUniversal Media, LLC ("NBC")[1] hereby respectfully submits this Reply Memorandum in Support of its Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiff Catelin Clobes fails to engage with any of NBC's legal arguments that her lawsuit should be dismissed, both because it is time-barred and otherwise fails to state an actionable claim. Instead, she fashions an Opposition that is essentially a copy-paste collage of her SAC, reordered and unnumbered. Like her SAC, it includes several passages purportedly sourced from a declaration by Robert J. Fisher. This declaration still has not been filed with this Court, if it exists at all – and, in any event, it would not bear upon this Motion. Her Opposition thus feebly attempts to sustain a lawsuit that never should have been brought.

---

[1] The individual defendants initially named in this case have been removed from the caption given their dismissal for lack of service. *See* Dkt. 27.

NBC's article—*How anti-vaxxers target grieving moms and turn them into crusaders against vaccines* (the "News Report")—reported Clobes's story in detail and presented her perspective about vaccines causing her daughter's death, as well as contradictory evidence, within the context of the anti-vaccine movement.  It is a well-reported news story on an issue of significant public concern.  Clobes's apparent belief that the News Report is unflattering to her is not enough to sustain her claims.  She fails to provide any legal basis as to why this case should continue.  Clobes's Second Amended Complaint should be dismissed with prejudice.

## ARGUMENT

**I.     MINNESOTA'S TWO-YEAR STATUTE OF LIMITATIONS EXPIRED BEFORE CLOBES COMMENCED THIS ACTION.**

The Opposition fails to acknowledge (1) that this lawsuit was not "commenced" for purposes of Minnesota's two-year statute of limitations until Clobes *served* NBC (*after* the limitations period had expired) or (2) that Minnesota's COVID-19 *suspension* provision is *not a tolling provision* and thus does not impact the expiration of the statute of limitations in this case.  Instead, without any legal support, Clobes seems to assert that filing her original Complaint commenced the lawsuit.  And, as NBC anticipated in its opening Memorandum, she argues that the statute of limitations was *tolled* rather than *suspended*, based on an inapplicable version of a law that was subsequently amended.

1.     Clobes states that the "*filing*" of her Complaint was timely, then goes on to state that NBC was "*served* well within the tolling period due to the covid-19 pandemic." Opp. (Dkt. 47) at 15-16 (emphasis added).  These two events, filing and service, are not

2

interchangeable: As NBC's opening Memorandum (Dkt. 39) sets forth in detail, service, not filing, stops the running of the statute of limitations in Minnesota. Mem. at 9-11. Where federal jurisdiction is based on diversity, as it is here, "Minnesota's substantive law, including its statute of limitations, applies." *Larsen v. Mayo Med. Ctr.*, 218 F.3d 863, 866 (8th Cir. 2000). Moreover, "state commencement rules apply because they are 'part and parcel of the statute of limitations.'" *Id.* at 867; *see also Fredin v. City Pages*, 2020 U.S. Dist. LEXIS 101236, at *16 (D. Minn. May 19, 2020). In Minnesota, a civil action is commenced "when the summons is served upon that defendant." Minn. R. Civ. P. 3.01; *Larsen*, 218 F.3d at 867. Minnesota's two-year statute of limitations thus expired before Clobes served NBC, under well-established Eighth Circuit precedent applying Minnesota law. *See* Mem. at 9-11.

2. Clobes cites to the superseded version of Minnesota's COVID-19 emergency provision, 2020 Minn. H.F. No. 4556, Art. 1, Sec. 16, when she asserts that this law "tolled" the statute of limitations. Opp. at 16. She then asserts that Minnesota subsequently enacted a law that "waived deadlines on court proceedings by an additional two months," citing an article, rather than the law itself. *Id.* She omits the fact that the law referenced in the article also *amended the law she cites*.[2] In fact, the law in the article is the very same law cited by NBC, *see* Mem. at 11-12 (citing 2021 Minn. H.F. No. 114, Art. I, Sec. 16(a)). This law states that it is "amend[ing]" 2020 Minn. H.F. No.

---

[2] Clobes also cites New York cases addressing that state's COVID-19 emergency provision. *See* Opp. at 16. These cases are not relevant to this analysis, as the laws are not analogous. She does not attempt to explain why those authorities should be considered here.

4556, Art. 1, Sec. 16. 2021 Minn. H.F. No. 114. As explained more fully in NBC's opening Memorandum, Mem. at 11-12, this law—which is the operative law, despite Plaintiff's failure to cite or analyze it—unequivocally provides that "deadlines imposed by statutes governing proceedings in the district and appellate courts, including any statutes of limitations or other time periods prescribed by statute, *shall not expire* from the beginning of the peacetime emergency declared on *March 13, 2020 . . . through April 15, 2021*." 2021 Minn. H.F. No. 114, Art. I, Sec. 16(a). In other words, it suspended, rather than tolled, statutes of limitations. The statute of limitations on Clobes's claims did not expire until September 24, 2021 (two years after publication)—well after April 15, 2021 (the end of the suspension period). The running of the statute of limitations in this case thus was not impacted at all by Minnesota's COVID-19 suspension provision.

Clobes's claims are untimely and should be dismissed with prejudice for this independent reason. Nonetheless, NBC will address the additional flaws in Clobes's Opposition below.

## II. CLOBES'S OPPOSITION MERELY REPACKAGES HER FLAWED ALLEGATIONS AND FAILS TO ADDRESS NBC'S DEFENSES.

Rather than addressing the substance of NBC's Motion, the Opposition appears to copy-paste allegations from the SAC without addressing their fundamental legal flaws and presents irrelevant arguments that do not address any of the defenses raised by NBC, including:[3]

---

[3] NBC notes as well that Clobes omits the "fault" element from her recitation of the legal standard for defamation. Opp. at 5. This element is not at issue for purposes of this

4

1.   Clobes fails to acknowledge any of NBC's arguments as to why her claims fail on the merits, including that several challenged statements are not "of and concerning" her, Mem. at 22, none of the challenged statements convey a defamatory meaning, *id.* at 23-24, none of the challenged statements are materially false, *id.* at 25-27, several of the challenged statements are protected by Minnesota's fair report privilege, *id.* at 27-30, and her derivative claims for "emotional distress" and "reasonable care" rise and fall with her defamation claim and fail to state causes of action, *id.* at 30-31.[4]  For all of these reasons, discussed in detail in NBC's opening Memorandum, Clobes's claims fail as a matter of law.

2.   Clobes notes that the reporter who authored the NBC article, Brandy Zadrozny, also participated in an interview on NBC's website.  Opp. at 3.  Clobes has not, however, alleged that a single statement from that interview defamed her.  *See* SAC (Dkt. 36) ¶¶ 7-8 listing statements from "the article"; Opp. at 7-9 (repeating SAC ¶ 8).

3.   Clobes repeats verbatim her contentions from Paragraphs 4-5 of her SAC, including that NBC's News Report "in journalistic terms, was a 'news story' and not an 'opinion piece'" and thus, as an ethical matter, "is required to be fair and balanced and not biased or slanted."  *See* Opp. at 6-7 (repeating SAC ¶¶ 4-5).  But what matters is

---

Motion.  For reference, however, the full legal standard is set forth in NBC's opening Memorandum.  *See* Mem. 12-13 & n.6.

[4] Clobes's Opposition was due on May 18, 2022.  On May 8, 2022, her counsel emailed undersigned counsel seeking a two-week extension, which undersigned counsel agreed they would not oppose.  Clobes nevertheless failed to request this extension from the court and filed her Opposition on June 1, 2022, well past the May 18 deadline.

whether Clobes has identified a false and defamatory statement about her, *see Stepnes v. Ritschel*, 663 F.3d 952, 963 (8th Cir. 2011), not her self-serving characterizations of the News Report (which speaks for itself) or her purported expert's musings on what constitutes good journalism, all of which are irrelevant to the defenses in NBC's opening Memorandum.

4. Indeed, although Clobes extensively quotes from that expert's purported declaration *see* Opp. at 6-7 (repeating SAC ¶¶ 4-6), neither that declaration (nor a second declaration reference in the SAC) has been filed with the Court. Nor has Clobes explained how this purported declarant is "relevant to her claims against NBC." *See* Mem. at 7 n.4. The related allegations and statements are similarly irrelevant.

5. Clobes fails to clarify which statements she alleges are defamatory (and why) and instead presents the Court with a "representative list" of statements, pulled verbatim from Paragraph 8 of her SAC. Opp. at 7-9. Although she continues to insist these statements are "false," she does not attempt to argue how any of these statements (or any other statements) could form the basis of a valid claim in light of the defenses set forth in NBC's opening Memorandum.

6. Clobes repeats irrelevant allegations concerning damages from her SAC in a section of her Opposition titled "Statements harmed the Plaintiff's reputation and also significantly lowered the Plaintiff in the estimation of the community." *Id.* at 9-15 (repeating SAC ¶¶ 9, 15, 21, 23, 30-34). Allegations of damages are plainly irrelevant to all of the defenses raised by NBC. *See generally* Mem.

7. As part of the above-noted section on damages, Clobes takes issue with (1) NBC's reporting that she "had a whiskey cocktail" on the evening of her daughter's death and (2) its reporting that, when Clobes called 911, she stated, "This is because she was sleeping with me." Opp. at 10-11. Clobes does not, however, attempt to assert that either statement is false, and thus they are not actionable and have no place in the Court's consideration of this Motion. *See Stepnes*, 663 F.3d at 963 (citing *Britton v. Koep*, 470 N.W.2d 518, 520 (Minn. 1991)); *see* Mem. at 25-27. Indeed, she argues merely that, in her opinion, inclusion of these details was "not necessary." *See, e.g.*, Opp. at 10. She ignores, however, that what information to include in a News Report is question for journalists and their editors, not plaintiffs or judges. *See, e.g.*, *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974) ("The choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper, and treatment of public issues and public officials . . . constitute the exercise of editorial control and judgment," and "[i]t has yet to be demonstrated how governmental regulation of this crucial process can be exercised consistent with First Amendment guarantees of a free press as they have evolved to this time.").

Moreover, Clobes acknowledges that the first statement was "included in the detective's report" and the second statement was "made during Plaintiff's 9-1-1 telephone call." Opp. at 10-11. Minnesota's fair report privilege applies to the publication of allegedly defamatory matter "concerning another in a report of an official action or proceeding . . . that deals with a matter of public concern," so long as "the report is accurate and complete or a fair abridgment of the occurrence reported." *Moreno*

*v. Crookston Times Printing Co.*, 610 N.W.2d 321, 331 (Minn. 2000) (citing Restatement (Second) of Torts § 611); *see* Mem. at 27-30.  For the additional and independent reason that both statements are covered by the fair report privilege, these statements are not actionable.

## CONCLUSION

For the reasons set forth above, as well as those set forth in its opening Memorandum, NBC respectfully requests that this Court grant its Motion to Dismiss Clobes's Second Amended Complaint with prejudice.

Dated:  June 15, 2022                                     BALLARD SPAHR LLP

 */s/ Leita Walker*
Leita Walker (MN Bar No. 0387095)
walkerl@ballardspahr.com
2000 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2119
Telephone: 612.701.5192

Leslie Minora (*pro hac vice*)
minoral@ballardspahr.com
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215.665.8500

*Counsel for Defendant NBCUniversal Media, LLC*

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CATELIN CLOBES,<br><br>Plaintiff,<br><br>v.<br><br>NBCUNIVERSAL MEDIA, LLC,<br><br>Defendant. | Civil Action No.<br>21-cv-02117-PJS-FJD<br><br><br>LOCAL RULE 7.1<br>CERTIFICATE OF COMPLIANCE |

I, Leita Walker, certify that the Reply Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint complies with Local Rule 7.1(f).

I further certify that, in preparation of the above document, I used Microsoft Word 2016 and that this word processing program has been applied specifically to include all text, including headings, footnotes, and quotations in the following word count. In compliance with Local Rule 7.1(f)(C), the word count does not include the caption, the signature block, or any certificates of compliance.

I further certify that the above document contains 1,951 words – and that the opening Memorandum and Reply together contain 9,948 words.

Dated: June 15, 2022                                BALLARD SPAHR LLP

                                                     /s/ Leita Walker
                                                    Leita Walker (MN Bar No. 0387095)

                                                    *Counsel for Defendant NBCUniversal Media, LLC*